UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MAGDALENA MARTINEZ, | ) | No. EDCV 14-1629-AGR |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND |
| v. | ) | ORDER |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff Magdalena Martinez filed this action on August 15, 2014.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.  (Dkt. Nos. 9, 10.)  On March 23, 2015, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

## PROCEDURAL BACKGROUND

On April 25, 2011, Martinez filed an application for supplemental security income, alleging an onset date of August 11, 2006.[1]  AR 16, 191-99.[2]  The application was denied initially and on reconsideration.  AR 16, 97, 108.  Martinez requested a hearing before an ALJ.  On December 5, 2012, the ALJ conducted a hearing at which Martinez and a vocational expert testified.  AR 32-69.  At the hearing, Martinez amended the alleged onset date to April 25, 2011.  AR 36.  On January 10, 2013, the ALJ issued a decision denying benefits.  AR 10-27.  On June 11, 2014, the Appeals Council denied the request for review.  AR 1-5.  This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether

---

[1]  Martinez previously filed an application for supplemental security income on June 18, 2007, alleging an onset date of August 11, 2006.  Administrative Record ("AR") 73.  An Administrative Law Judge ("ALJ") issued a decision denying benefits on May 13, 2009, and the Appeals Council denied the request for review.  AR 82-85.  Martinez took no further action on the ALJ's 2009 decision.

[2]  Pages 1 to 69 and page 86 *et seq.* of the AR are correctly paginated.  However, pages 70 to 85 have an extraneous initial digit, i.e., 772 instead of 72.  The court cites to the correct page number.

1  substantial evidence exists to support the Commissioner's decision, the court examines

2  the administrative record as a whole, considering adverse as well as supporting

3  evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than

4  one rational interpretation, the court must defer to the Commissioner's decision.

5  *Moncada*, 60 F.3d at 523.

6  **III.**

7  **DISCUSSION**

8  **A.    Disability**

9  A person qualifies as disabled, and thereby eligible for such benefits, "only if his

10  physical or mental impairment or impairments are of such severity that he is not only

11  unable to do his previous work but cannot, considering his age, education, and work

12  experience, engage in any other kind of substantial gainful work which exists in the

13  national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed.

14  2d 333 (2003) (citation omitted).

15  **B.    The ALJ's Findings**

16  Following the five-step sequential analysis applicable to disability determinations,

17  *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[3] the ALJ found that

18  Martinez has the severe impairments of status post partial mastectomy due to

19  carcinoma of the breast, status post right knee arthroscopy, obesity and major

20  depressive disorder.  AR 18.  Her impairments do not meet or equal a listing.  AR 19.

21  Martinez has the residual functional capacity ("RFC") to perform light work,

22  except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently;

23  stand, walk and/or sit for six hours in an eight-hour workday; frequently climb ramps or

24

25

26  [3] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsbury*, 468 F.3d at 1114.

27

28

3

1   stairs; occasionally climb ladders, ropes or scaffolds; and frequently balance, stoop,
2   kneel, crouch or crawl.  Martinez is limited to simple and routine tasks, and cannot
3   perform fast-paced or production work.  Her work environment is limited to a habituated
4   setting with little workplace change.  AR 20.  Martinez has no past relevant work, but
5   there are jobs that exist in significant numbers in the national economy that she can
6   perform such as ticketer, garment sorter and clothes stock sorter.  AR 26-27.

7          **C.    Treating Physician's Opinion**

8          Martinez contends the ALJ erred in evaluating the opinion of Dr. Padua, her
9   treating psychiatrist.

10         An opinion of a treating physician is given more weight than the opinion of
11  non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To reject an
12  uncontradicted opinion of a medically acceptable treating source, an ALJ must state
13  clear and convincing reasons that are supported by substantial evidence.  *Bayliss v.*
14  *Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When a treating physician's opinion is
15  contradicted by another doctor, "the ALJ may not reject this opinion without providing
16  specific and legitimate reasons supported by substantial evidence in the record.  This
17  can be done by setting out a detailed and thorough summary of the facts and conflicting
18  clinical evidence, stating his interpretation thereof, and making findings."  *Orn*, 495 F.3d
19  at 632 (citations and quotation marks omitted).  "When there is conflicting medical
20  evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas v.*
21  *Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

22         The record contains Dr. Padua's Mental Residual Functional Capacity
23  Questionnaire ("RFC Questionnaire") dated November 30, 2012.  AR 573-81.  Dr.
24  Padua saw Martinez monthly for 30 minutes and diagnosed Martinez with a major
25  depressive disorder, recurrent, severe without psychotic features.  Martinez had a

26
27
28

1    Global Assessment of Functioning ("GAF") score of 60.[4]  AR 573.  As to unskilled work,

2    Dr. Padua opined that Martinez was unable to meet competitive standards or had no

3    useful ability to function in 11 out of 16 work-related activities, and was seriously limited

4    but not precluded in the remaining activities.  AR 576-77.  By contrast, as to semiskilled

5    and skilled work, Martinez was limited but satisfactory in understanding, remembering

6    and carrying out detailed instructions, setting realistic goals or making plans

7    independently of others, and dealing with stress.  AR 578.  Martinez was limited but

8    satisfactory in interacting appropriately with the general public, and unlimited or very

9    good in maintaining socially appropriate behavior, adhering to basic standards of

10   neatness and cleanliness, traveling in unfamiliar places and using public transportation.

11   AR 579.  Dr. Padua indicated Martinez would likely be absent from work more than four

12   days per month due to her impairments or treatment.  AR 580.

13        The ALJ considered but did not give significant weight to Dr. Padua's opinion due

14   to lack of "significant positive objective clinical or diagnostic findings" to support the

15   opinion, inconsistency of the "extreme functional limitations" with his findings and the

16   record as a whole, and internal inconsistencies in the opinion.  AR 23-24.

17        The ALJ correctly found that Dr. Padua did not list significant findings in support

18   of his opinion.  An ALJ may reject a treating physician's opinion that is conclusory and

19   inadequately supported by clinical findings.  *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th

20   Cir. 2009); *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Dr. Padua did not

21   cite or attach supporting treatment notes or test results to the RFC Questionnaire.  AR

22   573-81.  Dr. Padua merely stated:  "depressed mood, tearful, unable to concentrate,

23   poor memory, anhedonia."  AR 574.  "Ms. Martinez has a diagnosis of recurrent major

24   depression.  She forces herself to do things, depressed mood, difficulty concentrating.

25   _____

26        [4]  A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and
     circumstantial speech, occasional panic attacks) or moderate difficulty in social,
27   occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers).
     Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000).
28

Easily forget[s] things and easily stress[es] out." AR 577.  The ALJ could reasonably conclude that Dr. Padua's opinion of extreme functional limitations was inadequately supported by the limited findings he documented on the RFC Questionnaire.

The ALJ could reasonably conclude that Dr. Padua's opinion was inconsistent with the findings in his treatment records and the record as a whole.  AR 24, 283-94, 383-89, 442-58.  As the ALJ noted, Dr. Padua's treatment records indicated Martinez's mental status examinations were normal with no indication of suicidal or homicidal ideation.  AR 23, 283-94.  Dr. Padua indicated Martinez was at risk for psychiatric decompensation without medications, but treatment records show that Martinez's mood was generally stable with medication and therapy.[5]  AR 283-94, 383-89.  The ALJ noted that the mental status examination by Dr. Bagner, a consultative examiner, indicated Martinez was generally normal other than a depressed mood.  AR 25, 403-04.  Dr. Bagner diagnosed a major depressive disorder and a GAF score of 60.  AR 25, 404.  Dr. Bagner opined that Martinez had mostly mild to moderate mental limitations, with a severe limitation in responding to work pressure.  AR 25, 404-05.

The ALJ could reasonably conclude that Dr. Padua's opinion was internally inconsistent.[6]  AR 24.  Dr. Padua assigned Martinez a GAF score of 60, which conflicts with his opinion that Martinez is severely functionally impaired.[7]  AR 24, 573.  Dr. Padua's opinion that Martinez has limited but satisfactory abilities to understand and remember detailed instructions, set goals, make plans, deal with stress, interact with the general public, maintain socially appropriate behavior, travel, use public transportation

---

[5]  The record does not contain counseling records from therapy sessions.  AR 45. The ALJ held the record open for two weeks after the hearing so her attorney could ascertain if those records existed.  AR 68.  No additional documents were submitted.

[6]  At the hearing, Martinez's counsel acknowledged that Dr. Padua's opinion is "a little bit internally inconsistent."  AR 38.

[7]  Martinez concedes that a GAF score of 60 is "indicative of an individual capable of sustaining simple repetitive tasks."  JS 6.

1    and handle funds, is inconsistent with his opinion that Martinez has no useful ability to
2    function or is unable to meet competitive standards in numerous areas.  AR 24, 578-79.
3         To the extent Martinez argues the ALJ should have contacted Dr. Padua, her
4    argument fails.  Rejection of a treating physician's opinion does not by itself trigger a
5    duty to contact the physician for further explanation.  *McLeod v. Astrue*, 640 F.3d 881,
6    885 (9th Cir. 2011).  The ALJ made no finding that the evidence was ambiguous or that
7    the record was inadequate to allow for proper evaluation.  *See Mayes v. Massanari*, 276
8    F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is
9    triggered only when there is ambiguous evidence or when the record is inadequate to
10   allow for proper evaluation of the evidence.").  At the hearing, when Martinez's counsel
11   explained that there was "an issue" with Dr. Padua's treatment records because they
12   were "like hieroglyphics," the ALJ asked Martinez's counsel if Dr. Padua would prepare
13   a written statement.  Martinez' counsel stated that he had "looked into that" and Dr.
14   Padua "won't do it."  AR 38.  The ALJ did not have a duty to contact Dr. Padua.
15        To the extent Martinez contends the ALJ failed to properly consider Dr. Bagner's
16   limitations pertaining to detailed tasks and changes in a routine work setting, her
17   contention is rejected.  The ALJ noted Dr. Bagner's opinion that Martinez had moderate
18   limitations in her ability to follow detailed instructions and had severe limitations in her
19   ability to respond to work pressure.  AR 25, 404-05.  The ALJ found Dr. Bagner's
20   opinion to be "generally consistent with the records as a whole."  AR 25.  An examining
21   physician's opinion constitutes substantial evidence when it is based on independent
22   clinical findings.  *Orn*, 495 F.3d at 631.  The ALJ reasonably construed Dr. Bagner's
23   opinion as consistent with an ability to perform simple and routine tasks with little
24   workplace change and no fast-paced or production work.  AR 20.
25        The ALJ articulated specific and legitimate reasons, supported by substantial
26   evidence in the record, for discounting Dr. Padua's opinion.  The ALJ did not err.
27
28

1    **D.    Credibility**

2        "To determine whether a claimant's testimony regarding subjective pain or

3    symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v.*

4    *Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must determine

5    whether the claimant has presented objective medical evidence of an underlying

6    impairment 'which could reasonably be expected to produce the pain or other

7    symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)

8    (en banc)).

9        "Second, if the claimant meets this first test, and there is no evidence of

10   malingering, the ALJ can reject the claimant's testimony about the severity of her

11   symptoms only by offering specific, clear and convincing reasons for doing so."

12   *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making a

13   credibility determination, the ALJ 'must specifically identify what testimony is credible

14   and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464

15   F.3d 968, 972 (9th Cir. 2006) (citation omitted).

16       In weighing credibility, the ALJ may consider factors including:  the nature,

17   location, onset, duration, frequency, radiation, and intensity of any pain; precipitating

18   and aggravating factors (e.g., movement, activity, environmental conditions); type,

19   dosage, effectiveness, and adverse side effects of any pain medication; treatment,

20   other than medication, for relief of pain; functional restrictions; the claimant's daily

21   activities; and "ordinary techniques of credibility evaluation."  *Bunnell*, 947 F.2d at 346

22   (citing SSR 88-13)[8] (quotation marks omitted).  The ALJ may consider:  (a)

23   inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies

24

25   _____

26       [8]  Social Security rulings do not have the force of law.  Nevertheless, they "constitute
     Social Security Administration interpretations of the statute it administers and of its own
27   regulations," and are given deference "unless they are plainly erroneous or inconsistent
     with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).
28

1 | between a claimant's statements and activities; (c) exaggerated complaints; and (d) an
2 | unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

3 |      Martinez testified that she feels sad sometimes for two weeks in a month.  AR 46-
4 | 47.  She has difficulty sleeping, concentrating and getting along with others.  AR 21, 47-
5 | 48.  She sometimes does not like how others express themselves, so she doesn't "go
6 | anywhere with anybody."  AR 47.  She has "constant" fatigue that sometimes "doesn't
7 | allow me to get out of bed" or causes her to rest in bed for one or two hours.  AR 50.
8 | She has difficulty breathing and ambulating because of her knees.  AR 21, 51.  She can
9 | walk less than one block and can stand for 15 minutes before she needs to sit down.
10 | She can sit for half an hour to an hour before she has to "readjust my back."  AR 51.
11 | She gets headaches two or three times a week for up to six to eight hours.  AR 54.

12 |      The ALJ found that Martinez's medically determinable impairments could
13 | reasonably be expected to cause the alleged symptoms, but her statements concerning
14 | the intensity, persistence and limiting effects of her symptoms were not entirely credible.
15 | AR 23.  The ALJ primarily relied on three reasons: (1) Martinez was "less than
16 | forthcoming" about her earnings and gave conflicting reasons as to why she stopped
17 | working; (2) her activities of daily living were not consistent with the alleged severity of
18 | impairment; and (3) the objective medical evidence did not support the alleged severity
19 | of her symptoms.  AR 18, 22, 23, 25.

20 |      1.  <u>Earnings and Why She Stopped Working</u>

21 |      An ALJ may consider "ordinary techniques of credibility evaluation, such as the
22 | claimant's reputation for lying, prior inconsistent statements concerning the symptoms,
23 | and other testimony by the claimant that appears less than candid."  *Tommasetti v.*
24 | *Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted).  The ALJ discounted
25 | Martinez's credibility because she was "less than forthcoming" in reporting her earnings
26 | and there was no objective way to know her earnings because she worked for
27 | unreported cash.  AR 18.  Martinez argues that her failure to report a "small amount of

28 |

1   income" does not render her testimony completely incredible.  The ALJ, however, did

2   not find her testimony completely incredible on that basis.

3        The ALJ found that Martinez gave conflicting reasons as to why she stopped

4   working.  AR 18.  At the hearing, she testified that she stopped working in 2006

5   because she had a high-risk pregnancy.  AR 42.  In the Disability Report – Adult, she

6   stated she stopped working on June 1, 1997 because her company closed.  AR 206.

7   Substantial evidence supports the ALJ's findings.

8                   2.  <u>Activities of Daily Living</u>

9        An ALJ may consider inconsistencies between a claimant's allegations and daily

10   activities.  *Bunnell*, 947 F.2d at 346.  Martinez could prepare meals, help her youngest

11   daughter with getting her ready for school and with her homework, do the laundry,

12   attend therapy or doctor appointments, maintain personal hygiene, clean, drive a car,

13   go out alone, shop in stores, manage her own finances and watch television.  AR 22,

14   56, 226-33.  Martinez admitted to Dr. Bagner that she had "fair relationships with family"

15   and could do housework, make breakfast, go to the doctor and therapy, bathe and

16   dress herself without assistance, manage her own money, do household chores, shop,

17   cook and watch television.  AR 22, 403.  Nevertheless, Martinez stated she has

18   difficulty lifting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs,

19   seeing, remembering, completing tasks, concentrating, understanding, following

20   instructions, using her hands and getting along with others.  AR 22, 231.  The ALJ

21   found that Martinez's daily activities were not limited to the extent one would expect for

22   a person with her complaints of disabling symptoms and limitations.  AR 22.  Some of

23   the physical/mental abilities and social interactions required to perform her daily

24   activities are the same as those necessary for maintaining employment.  *Id.*

25        Martinez argues that her activities of daily living do not equate to full-time

26   competitive employment.  However, the ALJ properly discounted her credibility to the

27   extent her daily activities were inconsistent with a "totally debilitating impairment."

28

1   *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [daily] activities

2   suggest some difficulty functioning, they may be grounds for discrediting the claimant's

3   testimony to the extent that they contradict claims of a totally debilitating impairment.").

4                3. Objective Medical Evidence

5        Although lack of objective medical evidence supporting the degree of limitation

6   "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ

7   may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.

8   2005). The ALJ thoroughly discussed the medical evidence in the record. AR 23-25. A

9   medical report dated February 19, 2010 indicated Martinez was diagnosed with lobular

10   carcinoma in situ in February 2007 and was treated with tamoxifen. AR 23, 275. Her

11   left breast carcinoma was in clinical remission and she was advised to continue

12   tamoxifen until February 2012. AR 23, 275. On May 27, 2010, Martinez was diagnosed

13   with neurofibromatosis type I with recurrent migrainous headaches. AR 23, 364-66.

14   She was treated conservatively with medication and was counseled regarding dietary

15   and lifestyle modifications. AR 23, 366. On June 14, 2011, Martinez was diagnosed

16   with menomentrorhagia and menorrhagia, abdominal pain, leiomyoma of the uterus and

17   breast pain. AR 23, 297-98. On May 8, 2012, Martinez was diagnosed with internal

18   derangement of the right knee and underwent arthroscopic debridement of the right

19   knee, arthroscopic patellofemoral chondroplasty of the right knee and a cortisone

20   injection. AR 23, 520. In July 2012, Martinez received physical therapy for her right

21   knee. AR 23, 539-41. The ALJ noted that Martinez's diagnostic examinations were

22   normal or showed only minor abnormalities. AR 23, 335-63.

23        The ALJ noted that Martinez sought treatment for her diagnosis of a major

24   depressive disorder. AR 23, 283-94, 383-89, 442-58. Dr. Padua indicated that

25   Martinez's mental status examinations were normal with no indication of suicidal

26   ideation or homicidal ideation. AR 23, 283-94. Martinez was found to be in good

27   compliance with her medications with no medication side effects. AR 23, 283-94.

28

1    Although Martinez was transported via ambulance to the hospital on October 6, 2011

2    for a panic attack, she was alert and oriented, and noted to be in mild emotional

3    distress.  She denied shortness of breath or chest pain.  She was placed on a cardiac

4    monitor and remained stable.  AR 501.  She was diagnosed with an anxiety attack and

5    discharged from the hospital two hours after arrival, with instructions to follow-up with

6    her therapist.  AR 505, 513.  On July 20, 2012, Dr. Bagner conducted a mental status

7    examination and reported Martinez was generally normal other than a depressed mood.

8    AR 25, 403-04.

9         Martinez argues that the ALJ may not rely solely on the absence of supporting

10   objective medical evidence to reject her credibility.  The ALJ did not rely solely on this

11   reason.  The ALJ's credibility finding is supported by substantial evidence.  "If the ALJ's

12   credibility finding is supported by substantial evidence in the record, we may not engage

13   in second-guessing."  *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec.*

14   *Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).  The ALJ did not err.

15   **E.    Lay Witness Testimony**

16        Martinez contends the ALJ erred in rejecting the lay witness statement of her

17   daughter Tracy.

18        "In determining whether a claimant is disabled, an ALJ must consider lay witness

19   testimony concerning a claimant's ability to work."  *Stout v. Comm'r*, 454 F.3d 1050,

20   1053 (9th Cir. 2006).  "When an ALJ discounts the testimony of lay witnesses, 'he [or

21   she] must give reasons that are germane to each witness.'"  *Valentine v. Comm'r*, 574

22   F.3d 685, 694 (9th Cir. 2009) (citation omitted).

23        The ALJ considered Tracy's third party function report but gave it "limited weight"

24   because the statements mirrored Martinez's allegations and therefore had "little

25   probative value."  AR 22, 234-41.  The ALJ also noted that Tracy is not a medical

26   professional and has the "pecuniary and filial motivation" to help Martinez receive

27   benefits.  The objective medical evidence does not support Tracy's statements.  AR 22.

28

1    An ALJ may discount lay witness testimony that is similar to the claimant's

2    subjective complaints when the ALJ has provided clear and convincing reasons for

3    rejecting those subjective complaints.  *Valentine*, 574 F.3d at 694.  The ALJ's finding

4    that Tracy's statements mirrored Martinez's allegations is supported by substantial

5    evidence.  *Compare* AR 226-33 *with* AR 234-41.  As discussed above, the ALJ properly

6    discounted Martinez's credibility.  Therefore, the ALJ may discount the lay witness

7    statements for the same reasons.  *See Valentine*, 574 F.3d at 694 (wife's testimony

8    properly rejected when ALJ properly discounted husband's similar testimony).

9        The ALJ erred in relying on Tracy's lay status to discount her lay witness

10   statements.  Lay witness testimony may be introduced to show the severity of a

11   claimant's impairment(s) and how it affects the ability to work.  *Bruce v. Astrue*, 557

12   F.3d 1113, 1116 (9th Cir. 2009) ("A lay person, Bruce's wife, though not a vocational or

13   medical expert, was not disqualified from rendering an opinion as to how her husband's

14   condition affects his ability to perform basic work activities.").  The ALJ erred in relying

15   on Tracy's pecuniary and filial motivation.  "[R]egardless of whether they are interested

16   parties, 'friends and family members in a position to observe a claimant's symptoms

17   and daily activities are competent to testify as to [his or] her condition.'"  *Valentine*, 574

18   F.3d at 694 (citation omitted).  Evidence that a lay witness "exaggerated a claimant's

19   symptoms *in order* to get access to his disability benefits, as opposed to being an

20   'interested party' in the abstract, might suffice to reject that [person's] testimony."  *Id*.

21   (emphasis in original).  The ALJ made no such finding.

22       The ALJ's errors were harmless in this case because Tracy's statements mirrored

23   Martinez' subjective complaints, which the ALJ properly discounted.  Moreover,

24   inconsistency with medical evidence is a germane reason to discount lay witness

25   statements.  *Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.

26   2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with

27   medical evidence."); see also 20 C.F.R. § 404.1529(c)(3) (a factor to be considered in

28

1   evaluating third-party statements is their consistency with the objective medical

2   evidence and the record).

3                                                        **IV.**

4                                                    **<u>ORDER</u>**

5          IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

6          IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the

7   Judgment herein on all parties or their counsel.

8

9   DATED: May 29, 2015

10                                               _____
                                                        ALICIA G. ROSENBERG
                                                    United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28